(655 P.2d 953)

No. 53,768

JOANN and JAMES LEWIS, *Appellants,* v. EVERETT MARMON and THE CITY OF KANSAS CITY, KANSAS, a Municipal Corporation, *Appellees.*

Opinion filed December 23, 1982.

*Lynn R. Johnson* and *Mark Beam-Ward,* of Schnider, Shamberg & May, Chartered, of Shawnee Mission, for the appellants.

*Daniel B. Denk,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, and *Robert J. Watson,* city attorney, for the appellees.

Before SPENCER, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The plaintiffs have appealed from an order of the district court granting summary judgment to defendants in actions brought by plaintiff arising out of the death of Darrell Lewis.

The facts are that on February 23, 1977, defendant Everett Marmon, a police officer employed by the City of Kansas City, Kansas, was patroling the Armourdale district of that city. At approximately 1:00 p.m., he was dispatched to assist Ronald Sprowl, another officer, in investigating a possible burglary in progress involving two black males in a vacant house.

Officer Sprowl arrived at the scene first and noticed the de-

cedent Lewis inside the house. When Lewis saw Officer Sprowl, he ran toward the back of the house, and Sprowl drew his gun and ran around the house after him. As Sprowl rounded the corner of the house, he ran into the other man involved in the burglary, Louis Willingham. Willingham resisted arrest and began to struggle with Sprowl.

It was at this point that Officer Marmon arrived. As he was getting out of his patrol car, Lewis emerged from the house. Sprowl shouted, "There goes the other one," and motioned in the direction of Lewis with his gun. Both officers claim that Marmon ordered Lewis to halt. When he did not, Marmon proceeded to chase Lewis with his gun drawn. Lewis then stopped or paused about fifteen feet from Marmon, turned sidewise and raised his left hand outward. Marmon's testimony was that he thought Lewis had a gun, that he feared for his own safety, and that he thereupon shot Lewis. Lewis died shortly thereafter.

Willingham's testimony through affidavit was that Marmon did not command Lewis to halt, and that shortly after shooting Lewis, Marmon returned to where Sprowl was with Willingham and stated, "I got the other nigger," and then turned to Willingham and said, "I should do the same to you."

Plaintiffs further allege that Lewis was not wearing a coat and that Marmon had a clear view of him, especially his left side and hand in which he was supposedly carrying a gun. A search of the immediate area did not uncover a gun or weapon of any kind.

Based on these facts, plaintiff Joann Lewis, administrator of the estate of Lewis, filed a survivor's action against Marmon for negligently and wantonly shooting Lewis, and James and Joann Lewis, the parents and next of kin of the decedent, brought a wrongful death action against Marmon. The suits were later amended to include the City of Kansas City, Kansas, as a defendant, and the actions were consolidated for all purposes.

After much discovery, defendants moved for summary judgment. The trial court sustained defendants' motion, finding that the key issue was whether Marmon was reasonable in his use of deadly force as a matter of law. The court concluded:

"Under the facts in the case at bar it is clear that Officer Marmon's use of deadly force was justified under K.S.A. 21-3215 both because he reasonably believed his life to be in danger and that the use of such force was necessary to prevent the

escape of the suspect whom the officer reasonably believed had committed a felony."

Plaintiffs contend that the trial court erred in granting summary judgment since genuine issues of material fact remain unresolved. They maintain that the evidence is disputed on at least two points, and that the key issue of the reasonableness of Marmon's conduct is intrinsically one which is reserved for the jury. The two evidentiary points in dispute are whether Marmon told Lewis to halt before he shot him, and whether Marmon made the racially offensive remark to Sprowl in front of Willingham.

The parties and the trial court in the present case have chosen to use K.S.A. 21-3215 as the standard to judge Officer Marmon's conduct, although the statute technically applies only in criminal cases. That statute provides in part:

"(1) A law enforcement officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using force likely to cause death or great bodily harm *only* when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or another person, or when he reasonably believes that such force is necessary to prevent the arrest from being defeated by resistance or escape and the person to be arrested has committed or attempted to commit a felony or is attempting to escape by use of a deadly weapon, or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay." (Emphasis supplied.)

However, the principles enunciated in the statute concerning the use of force in self-defense or in arresting a fleeing felon are basically the same as the traditional common law rules applicable in civil cases. (See PIK Civ. 2d 14.04 and 14.05 [1977]; 5 Am. Jur. 2d, Arrest § 83; Annot., 83 A.L.R.3d 174.)

The trial court found that the key question in this case was whether the defendant Marmon acted reasonably in light of all the facts and circumstances surrounding his action.

Plaintiffs contend that this issue is a question of fact to be determined by the jury. This is the general rule. As stated in 6 Am. Jur. 2d, Assault and Battery § 161, p. 136:

"Although, insofar as justification by self-defense is concerned, a person's conduct is to be judged by considering his situation as it reasonably appeared to

him at the time, the defendant's own judgment in this respect is not controlling. . . .

"The question of whether the belief of the defendant that he was in danger was a reasonable one under all the circumstances of the case is a question to be determined by the jury."

See also the Comment to PIK Civ. 2d 14.04 (1977).

Defendants argue that under the circumstances here, there was no genuine issue of fact, and that the courts should place emphasis not on the traditional rules of self-defense, but on the reasonableness of the officer's belief that such force was necessary under the extremely stressful situations in which an officer is required to function. In support of this argument, defendants cite decisions of other jurisdictions where courts have not required a jury determination of the reasonableness of the officers' actions in using deadly force and have granted summary judgment. *Maiorana v. MacDonald*, 596 F.2d 1072 (1st Cir. 1979); *LaMonte v. City of Belleville*, 41 Ill. App. 3d 697, 355 N.E.2d 70 (1976).

Because of the nature of police work, the law does not require infallible judgment on the part of a police officer. He is not required to know with certainty that his life or another's life is threatened in order to justify his use of deadly force. All that is required is that the officer's belief be reasonable under the circumstances presented.

In *State v. Davis*, 169 Kan. 251, 218 P.2d 215 (1950), the defendant was convicted of manslaughter and on appeal made arguments concerning an instruction on self-defense. The court commented:

"Appellant contends a correct instruction would have stated defendant ' . . . would be justified in taking such steps as appeared *to him* at the time reasonably necessary to prevent Ferguson from harming him.'

"It is true the test is not what the circumstances actually were but whether the circumstances were such as appeared to the defendant at the time to be reasonably necessary to protect himself. (*State v. Reed*, 53 Kan. 767, 779, 37 Pac. 174; *State v. Keehn*, 85 Kan. 765, 792, 118 Pac. 851; *State v. Snow*, 121 Kan. 436, 247 Pac. 437.) Of course, the apprehension of danger must be reasonable *and of this reasonableness the jury is the ultimate judge.*" (Emphasis added.) 169 Kan. at 253-54.

More recently, in *State v. Johnson*, 6 Kan. App. 2d 750, 634 P.2d 1137, *rev. denied* 230 Kan. 819 (1981), the defendant appealed from a conviction of aggravated assault with a gun. The defendant argued that his conduct in shooting another in defense

of his property was reasonable under the circumstances. In refusing to reverse the conviction, the court stated:

"The prosecution presented this case to the trial court and argued it to the jury on the theory that defendant's conduct constituted aggravated assault that was not justified because it was excessive conduct under the circumstances. In other words, the theory of the prosecution was that defendant's conduct exceeded that permitted a private citizen in defense of property of his which is other than his dwelling and exceeded that permitted a private citizen when making a 'citizen's arrest.' See K.S.A. 22-2403; K.S.A. 21-3216.

"The authors of Pattern Instructions for Kansas—Criminal say K.S.A. 21-3213 is the only statute which makes the 'reasonable man' the standard as relates to force. PIK Crim. Comment, p. 95. K.S.A. 21-3216(1) and K.S.A. 21-3215(1) make the reasonable belief of the actor the standard as relates to force. *Definition and application of those standards under the facts of a particular case are uniquely matters for resolution by the trier of fact; that is, a job for the jury.*" (Emphasis added.) 6 Kan. App. 2d at 752-53.

Summary judgment is an exception to this rule, and has been granted in only a very few cases, such as where the officer had prior knowledge that his adversary was armed and dangerous, or where the officer was confronted by an armed assailant. *Maiorana v. MacDonald*, 596 F.2d 1072; *LaMonte v. City of Belleville*, 41 Ill. App. 3d 697.

The trial court correctly set forth the rules governing the granting of summary judgment in a case such as this. It is not proper if there remain genuine issues of material fact. *Welch v. Young*, 225 Kan. 189, 589 P.2d 567 (1979). The party against whom summary judgment is sought is also to be given the benefit of all inferences from the facts under consideration. A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. *Gleichenhaus v. Carlyle*, 226 Kan. 167, 597 P.2d 611 (1979). Whether a party acts in good faith depends not only on the facts and circumstances, but also on his state of mind. *Stanfield v. Osborne Industries, Inc.*, 7 Kan. App. 2d 416, 643 P.2d 1115, *reversed in part on other grounds* 232 Kan. 197, 654 P.2d 917 (1982).

In the present case two factual issues remain in dispute: The decedent was unarmed, and Marmon had a clear, close view of him, particularly the hand and arm which he raised as he stopped. Plaintiffs contend that Marmon had no reason to believe that Lewis had a gun in his hand. There is evidence that

Marmon did not order Lewis to halt and that the shooting might have been racially motivated. It cannot be said that reasonable persons could reach but one conclusion from the same evidence. The reasonableness of Marmon's belief that his life was in danger was clearly a question for the jury, and the trial court erred in granting summary judgment.

Plaintiffs next claim that the only justification ever asserted by Marmon for shooting Lewis was his fear for his own safety, and that it was error, therefore, for the court to find that Marmon was also justified in using deadly force because he reasonably believed that it was necessary to prevent the escape of a fleeing felon.

Defendants' response is that the mere fact that Marmon stated that he fired the shot in the belief that his life was in danger does not, as a matter of law, preclude the court from considering other justifications for the officer's conduct.

The questions involved in this claim of error are essentially the same as those previously addressed with respect to plaintiffs' first claim of error, and further discussion is unnecessary. It is sufficient to state that in order to justify Marmon's action in shooting Lewis as a fleeing felon, there must be competent evidence presented to support a finding that his action was motivated, in part at least, by a reasonable belief on his part that Lewis had committed or attempted to commit a felony, and that the use of deadly force was necessary either to prevent his escape or because he posed a threat of great bodily harm to others unless arrested without delay. The question of whether such belief was reasonable under the circumstances is a question for the jury.

Reversed and remanded.